**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<table>
<tr><td>CHAMBERS OF<br>**MICHAEL A. SHIPP**<br>UNITED STATES MAGISTRATE JUDGE</td><td>MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 2042<br>NEWARK, NJ 07102<br>973-645-3827</td></tr>
</table>

**Not for Publication**

**LETTER OPINION & ORDER**

December 8, 2010

**VIA CM/ECF**
All counsel of record

> Re:   **Freedman & Gersten, LLP, v. Bank of America, N.A., et al.**
>        **Civil Action No. 09-5351 (SRC)(MAS)**

Dear Counsel:

This matter comes before the Court by way of Plaintiff Freedman & Gersten LLP's ("Plaintiff" or "Freedman & Gersten") motion to compel the production of certain discovery. (Docket Entry Number ("Doc. No.") 19 ("Pl.'s Moving Br.").) Defendants Bank of America, National Association ("BOA") and Michael G. Vondras ("Vondras") (collectively, "Defendants") oppose the motion. (Doc. No. 21 ("Defs.' Opp'n Br.").)

For the reasons stated below, Plaintiff's motion is granted in part and denied in part without prejudice.

I.       **BACKGROUND**

As the parties are well-versed in the underlying facts of this matter, this Court will address only those facts relevant to the pending motion. This matter pertains to a fraudulent check that Plaintiff received from a client. (Doc. No. 1 ("Compl.") ¶ 10.) Subsequent to depositing this check, BOA provisionally credited the funds in Plaintiff's Attorney Trust Account. (*Id.* at ¶ 12.) With this assurance, Plaintiff wired various amounts of money on several

different occasions for its client, Weltronics Component Ltd. (*Id.* at ¶¶ 13, 22-26, 28-29.) After these wires, BOA discovered the check was fraudulent and returned it unpaid, leading to a six-figure overdraft of Plaintiff's account. (*Id.* at ¶¶ 30-31.) Thereafter, BOA referred this matter to the Investigative Services Section of its Corporate Security Department. (Defs.' Opp'n Br. 5.)

As a result of these actions, Plaintiff is filing various negligence, consumer fraud, breach of contract, breach of covenant of good faith and fair dealing, fraud and conversion claims against Defendants. (*See generally* Compl.) The overarching allegation of these claims rests on Plaintiff's belief that BOA owed Plaintiff a duty to more thoroughly investigate the legitimacy of the check at issue. (*See* Pl.'s Moving Br. 1.) Therefore, Plaintiff moves to compel discovery of documents reflecting the internal investigation surrounding its transactions with BOA in order to substantiate these claims. (*See id.* at 1-2.)

## II.   LEGAL STANDARD & ANALYSIS

Under Federal Rule of Civil Procedure 26(b), a court may compel discovery of any matter relevant to a party's claims, defenses, or the subject matter involved in the action, provided that the court finds good cause. Fed. R. Civ. P. 26(b). In determining good cause, courts in this District interpret Federal Rule of Civil Procedure 26(b) liberally, creating a broad vista for discovery. *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The party seeking discovery bears the burden of "showing that the information sought is relevant to the subject matter of the action and may lead to the production of admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 1990); *see also Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 105 (D.N.J. 1990). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." Fed. R. Civ. P. 26(b)(1).  Indeed, discovery may encompass "any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 496 (D.N.J. 2004) (citing *Caver*, 192 F.R.D. at 159).

Although this Court interprets Rule 26 broadly, pretrial discovery is not without limitation.  *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Specifically, Federal Rule of Civil Procedure 26(b)(2)(C) allows a court to limit discovery if the burden or expense of the proposed discovery is likely to outweigh its benefit to the requesting party.  In deciding this, courts consider the following factors: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Here, Plaintiff requests an Order from this Court compelling Defendants to respond to Document Requests 22, 23, 24 and 30, each of which is discussed individually below.

> **Document Request 22** – **All documents referring to or reflecting any internal investigation, review, or report by or on behalf of BOA concerning the Check, including, but not limited to, by persons, areas, or departments at BOA responsible for security, check fraud, or any other similar functions.**

Freedman & Gersten requests production of any documents relating to or regarding any internal investigations conducted by or on behalf of Defendants with regard to the transaction at issue in this case. (Pl.'s. Moving Br. 2-3.)  This includes BOA's general policies and procedures concerning the handling of suspicious activity, and more specifically, all documents contained in BOA's Corporate Security File regarding the investigation of the activity at issue.  (*Id.*)  Plaintiff claims this production "will seemingly reveal BOA's own assessment of whether its employees'

conduct in depositing and processing the Check was in accord with BOA's policies and procedures and/or if such policies and procedures are claimed to be 'commercially reasonable,' [and] whether the conduct of bank employees constituted negligent or other misconduct." (*Id.* at 1.)

Plaintiff claims these documents are part of general business practices and are not privileged. (*Id.* at 10.) Specifically, Plaintiff takes the position that the Suspicious Activity Report ("SAR") privilege[1] does not ban the production of all internal bank reports. (*Id.* at 12-13, citing *Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682-83 (S.D. Tex. 2004).) Therefore, Plaintiff asserts that BOA must produce internal memoranda drafted in response to the fraudulent activity at issue. (Pl.'s Moving Br. 15.) Defendants, on the other hand, claim they are not obligated to disclose these materials because all were prepared in anticipation of filing a SAR. (Defs.' Opp'n Br. 7-10.) As such, Defendants maintain that these materials fall under the umbrella of the federal statutory SAR protection and to require production would violate federal law. (*Id.* at 7.)

In *Eyo v. United States*, this Court acknowledged that financial institutions should be free to report suspicious transactions to the federal government without fear of civil liability. No. 06-6185, 2007 U.S. Dist. LEXIS 88088, at **15-16 (D.N.J. Nov. 29, 2007) (agreeing with the reasoning set forth in *Whitney National Bank*, 306 F. Supp. 2d at 678, which prohibited the disclosure of communications between bank and government officials). Accordingly, this Court agrees with BOA that SARs are not discoverable material. Indeed, the statutory language of 12 C.F.R. 21.11(k), explicitly bars the pretrial production of this documentation:

---

[1] National banks are required to file SARs with the federal government whenever they detect a suspicious transaction related to money laundering. SARs are confidential and are not to be revealed to the general public. Federal law treats these SARs as privileged documents and allows banks to shield their contents in litigation. (*See* Defs.' Opp'n Br. 7-8, citing *Union Bank of Cal. v. The Super. Ct. of Alameda Cnty.*, 29 Cal. Rptr. 3d 894, 897 (Cal. App. 2005).)

(k) Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (e.g. 31 U.S.C. 5318(g)), or both, and shall notify the Office of the Comptroller of the Currency.

However, this section is not as broad in scope as Defendants would have this Court believe.  Conversely, the Court finds good cause to permit the disclosure of supplemental discovery related to documents and facts pertaining to the suspicious activity at issue in this matter, which were created in the ordinary course of business.  *See, e.g., In Re Edward Mezinsky*, No. 06-6185, 2000 Bankr. LEXIS 1067, at **2-9 (Bankr. E.D. Pa. Sept. 7, 2000) (requiring bank to produce supplemental documents related to SARs, reasoning that bank failed to provide binding authority to support its contention that "documents that were replaced by and/or were predecessors to SARs are subject to the non-disclosure provision of 12 C.F.R. § 21.11(k). . . ."); *Bank of China, N.Y. Branch v. St. Paul Mercury Insur. Co.*, No. 03-9797, 2004 U.S. Dist. LEXIS 23364, at *16 (S.D.N.Y. Nov. 18. 2004) ("the facts giving rise to the filing of a SAR are discoverable if those facts are available in a document created in the ordinary course of the Bank's business.  However, the Bank is precluded from stating whether certain facts are contained in the SARs themselves.")).[2]

---

[2]  Other courts outside of this District are split on what documents may be disclosed in relation to SARs, if any.  Some courts have summarily denied the production of such discovery that was prepared as part of a financial institution's process for filing a SAR. *See, e.g., Cotton v. Privatebank & Trust Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002) ("[D]ocuments representing drafts of SARs or other work product or privileged communications that relate to the SAR itself . . . are not to be produced because they would disclose whether a SAR has been prepared or filed."); *Weil v. Long Island Sav. Bank*, 195 F. Supp. 2d 383, 390 (E.D.N.Y. 2001). Other courts, however, recognize that the SAR protection only applies to the SARs themselves and not to other reports or documents evidencing suspicious activity. *See, e.g., Gregory v. Bank One, Ind., N.A.*, 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002) (the rule "requires confidentiality only of SARs and their contents, not of other reports of suspicious activity . . . . [the] requirement of confidentiality applies only to the SARs themselves and the information contained therein, but not to their supporting documentation.").

Therefore, based on this Court's liberal pretrial discovery standard, the Court grants

Plaintiff's request for any memoranda or documents drafted in response to the suspicious activity

at issue in this case. However, Defendants shall not produce any SARs or previous drafts of

SARs, need not indicate if and when a SAR was produced, and shall not state what documents

and facts were or were not included in any SARs. Although BOA may have undertaken an

internal investigation in anticipation of filing a SAR,[3] it is also a standard business practice for

banks to investigate suspicious activity and BOA does not cite any binding precedent on this

Court which bars the production of this relevant documentation. The documents and facts

produced in the ordinary course of business are necessary and relevant for purposes of Plaintiff

discovering and/or assessing the precise facts of this incident, the source of the fraudulent check

and whether BOA acted properly in responding to the facts at issue in this case.

> **Document Request 23 – All documents evidencing or concerning any
> investigation and/or report by or on behalf of BOA concerning the Check,
> including, but not limited to, by persons, areas, or departments at BOA
> responsible for security, check fraud, or any other similar functions.**

In further elaborating its document request, Plaintiff seeks the production of "any such

policies, procedures, and guidelines" in relation to BOA's internal investigation of suspicious

activity. (Pl.'s Moving Br. 2.) Freedman & Gersten believes this information is necessary in

order to establish Vondras and BOA's potential negligence in receiving and depositing the check

at issue. (*Id.* at 10.) Once again, Defendants assert this information is privileged pursuant to 12

C.F.R. 21.11(k) and 31 U.S.C. 5381(g). (*See* Defs.' Opp'n Br. 9-10.)

---

[3] BOA states in its opposition brief that Anne Starr, the BOA investigator who opened,
prepared, and maintained the file, prepared documents in response to a fraudulent crime.
Therefore, the entire investigation was undertaken in anticipation of the potential filing of an
SAR. (*See* Starr Cert. 5.)

Based on the same reasoning set forth above, this Court finds good cause to grant

Plaintiff's request for supplemental discovery responsive to Document Request 23. Specifically,

the Court finds that Freedman & Gersten is entitled to discovery related to BOA's policies and

procedures for handling suspicious activity and risk management, except for those policies and

procedures specifically designated for SARs. (*See* Pl.'s Moving Br. 2.)  Such information is

relevant and must be produced, as it may reveal any of the following: (i) whether Vondras

exercised due diligence in investigating the source of the six figure check from an overseas

company; (ii) whether he properly followed internal procedures for assessing the check's

legitimacy before provisionally crediting Plaintiff's Attorney Trust Account; (iii) whether BOA

had proper preventative steps in place to investigate the check's legitimacy before depositing it;

and (iv) any other related information.  If Vondras deviated from BOA protocol in not reporting

the receipt of a check of substantial value sooner,[4] this information is highly relevant to the

Plaintiff's claims of consumer fraud, negligence, conversion and other federal law violations.[5]

Furthermore, Plaintiff alleges BOA violated The Expedited Funds Availability Act[6] and provided

insufficient training to employees.  (Compl. ¶¶ 75-80.)  Therefore, the production of these

policies and procedures is necessary to see if said policies and procedures fall below those

---

[4] The Court notes that this matter was not referred to BOA's Corporate Security Department
until March 11, 2009, a month after Plaintiff deposited the fraudulent check and two weeks after
it was returned unpaid. (Defs.' Opp'n Br. 5.)

[5] Plaintiff alleges that BOA and Vondras "committed unconscionable business practices relating
both to . . . banking services and with respect to the Check," did not perform necessary inquires
when receiving the check, and/or did not exercise reasonable care in providing banking services.
(Compl. ¶¶ 41-43.)  Further, Plaintiff alleges that BOA had a duty to train its employees and take
steps to protect its customers from losses resulting from counterfeit checks. (*Id.* at ¶¶ 60-71.)

[6] The *Expedited Funds Availability Act*, also known as Regulation CC, was enacted by Congress
for the purpose of standardizing hold periods on deposits made to commercial banks and to
regulate institutions' use of deposit holds. *See Bank One Chi., N.A. v. Midwest Bank & Trust
Co.*, 516 U.S. 264, 266 (1996).

currently in place in the banking industry, and those required by Congressional regulatory standards.

However, acknowledging the confidential nature of SARs and noting that if BOA produces its policies and procedures for filing a SAR, Plaintiff, or anyone else for that matter, can easily infer whether a SAR was filed, Defendants need not produce such policies and procedures. Indeed, knowledge of what BOA's policies are for SARs could implicate BOA and its right to keep its decision to file a SAR out of the public eye by exposing its decision-making process. *See* 31 U.S.C. 5311 (Declaration of Purpose of the Bank Secrecy Act/Anti-Money Laundering Act); *Union Bank*, 29 Cal. Rptr. 3d at 897. This simply is not within the spirit of 31 U.S.C. 5381(g) or 12 C.F.R. 21.11(k).

Therefore, Plaintiff's request for supplemental discovery regarding BOA's policies and procedures related to check fraud and preventative procedures is granted. Any request for policies and procedures specifically related to filing of SARs and/or the decision to file a SAR is denied without prejudice.

> **Document Request 24 – All documents evidencing or concerning any investigation, report, and/or personnel file notation by or on behalf of BOA concerning the actions of Vondras relating either to the Check or to the facts and circumstances of the Complaint, including, but not limited to, persons, areas or departments at BOA responsible for internal audits, security, personnel, human resources, or any other similar functions.**

Freedman & Gersten is requesting any documentation concerning Vondras's conduct in response to receiving the check at issue, asserting that this information is necessary in order to prove his negligence. (Pl.'s Moving Br. 1-2, 5.) In opposing Plaintiff's request, Defendants argue this information is protected by the attorney-client privilege, work product doctrine and the SAR privilege statute. (Defs.' Opp'n Br. 4-5.)

8

Evaluative documents regarding an employee's conduct in handling suspicious activity contained in personnel files are generally discoverable.  In *Professional Recovery Services v. GE Capital Corporation*, this District recognized that "a narrowly tailored request for specific documents, some of which might be found in [defendant's] personnel file" is a potentially permissible discovery request.  No. 06-2829, 2009 U.S. Dist. LEXIS 3889, at *14 (D.N.J. Jan. 15, 2009).

Additionally, the attorney-client privilege and the work product doctrine do not apply to documents produced in the course of an internal investigation.  *See Payton v. N.J. Tpk. Auth.*, 148 N.J. 524, 552-53 (1997).  These documents are generally created not in anticipation of litigation, but instead in order to comply with internal investigative procedures and policies.  *Id.* Therefore, documents such as these are producible, unless a party can further demonstrate that the documents were also created in anticipation of a subsequent litigation.

Here, the Court is not convinced by BOA's assertion that the responsive documents are protected by a privilege.  Indeed, the actions of Vondras in the course of the transaction with Plaintiff are highly relevant to Freedman & Gersten's claims.  Plaintiff's case rests on the alleged negligence, inaction and fraud of both Vondras and BOA while handling the check.  Therefore, if BOA undertook any investigation to reveal Vondras's potential negligence or fraudulent conduct, documentation evidencing or contradicting same is relevant and may lead to admissible evidence.

Therefore, Plaintiff's motion to compel discovery responsive to Document Request 24 is granted.  However, as previously stated, Defendants need not produce any SARs, previous drafts of SARs, the contents of any SARs or whether a SAR was even filed.  BOA need only produce those documents created in the ordinary course of business that are responsive to the request and do not include the actual SAR, if any.  To the extent Defendants assert that a document is

9

privileged, it shall be included in the *in camera* production and privilege log to be produced to

this Court, as further discussed below.

> **Document Request 30 – All documents authored by, sent to, reviewed, or read by BOA employee Anne Starr relating to the subject matter of this lawsuit whether or not maintained in any files.**

An internal investigation of suspicious activity within a corporation by in-house counsel

does not necessarily fall under the privilege of the work product doctrine or the attorney-client

privilege. *See Waugh v. Pathmark Stores*, 191 F.R.D. 427, 432 (D.N.J. 2000) (citing *Payton*,

148 N.J. at 550-52); *see also Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1099 (D.N.J.

1996). Precedent in this District stresses that communications and documents created for

internal investigative purposes are discoverable. *See, e.g., Waugh*, 191 F.R.D. at 432; *Harding*,

914 F. Supp. at 1099. For example, in *Payton*, the court stated that:

> While an organization or corporation like defendant can be a "client" for purposes of the privilege, N.J.R.E. 504(3), a fine line exists between an attorney who provides legal services or advice to an organization and one who performs essentially nonlegal duties. An attorney who is not performing legal services or providing legal advice in some form does not qualify as a "lawyer" for purposes of the privilege. Thus, when an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, the privilege is inapplicable. That result obtains even where litigation may eventually arise from the subject of the attorney's activities.

148 N.J. at 552-53 (internal citations omitted). In determining whether a document is privileged,

courts stress the purpose and function of the attorney in the particular situation. For example, the

Court in *Harding* required the defendant to produce all of the underlying documentation that its

in-house counsel drafted or created with respect to an internal investigation, because the

corporation hired the attorney to discover the precise facts of an incident. *See* 914 F. Supp. at

1099. Therefore, the *Harding* court found that the documentation was not created in anticipation

of litigation, but was created for investigation purposes. *See id.* As explained in both *Payton*

and *Harding*, if the actions of in-house counsel were simply to enforce internal policy or conduct an investigation to remedy the allegations, then the privilege does not apply. *See Payton*, 148 N.J. at 552-53; *Harding*, 914 F. Supp. at 1099.

Similarly, the work product doctrine does not apply when an attorney undertakes an internal investigation to comply with internal policy. *See Harding*, 914 F. Supp. at 1099. The work product doctrine only applies where the materials in question were prepared in anticipation of litigation and not in the course of an investigation to discover the precise facts of a particular incident. *See id.*

Given the facts of this case, it is unclear exactly what role Anne Starr played throughout the course of this investigation. Defendants launched the investigation one month before Plaintiff filed suit, suggesting that BOA initially conducted an investigation to uncover the facts of the incident and comply with internal procedures. However, once Plaintiff filed this suit, Anne Starr can and likely did begin authoring documents in anticipation of the pending litigation. Since Anne Starr served as the internal investigator of this suspicious incident, she likely initially created documents to comply with internal procedures, but at times also created documents to prepare BOA for litigation.

Therefore, Plaintiff's request for an *in camera* review of these documents is granted. The Court must determine which documents were prepared in anticipation of litigation and which were authored to comply with internal procedures. Defendants' *in camera* production shall include a detailed privilege log setting forth: (i) the names and job titles of the authors and recipients to all documents, along with information regarding the persons' relationship to any of the Defendants; (ii) the dates of all documents; and (iii) BOA's legal position as to why the document is protected under the attorney-client privilege or work product doctrine.

11

## III.   CONCLUSION

Based on the foregoing, and for good cause shown, it is ORDERED THAT:

1.  Plaintiff's motion to compel is granted in part and denied in part without prejudice.

2.  In compliance with this Opinion and Order, Defendants shall provide supplemental discovery to Discovery Requests 22, 23 and 24 by **December 22, 2010**.  However, Defendants need not produce the following categories of documents: (i) SARs that were filed; (ii) drafts of SARs; or (iii) documents specifically related to Defendants' policies and procedures for filing a SAR.  To the extent the aforementioned discovery requests may be interpreted to request same, Plaintiff's requests to compel production of same are denied without prejudice.

3.  Regarding Document Request 30, in accordance with this Opinion, Defendants shall submit the *in camera* review documents and privilege log to the Court by **December 22, 2010**.

MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE